**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO:


SRILAKSHMI MEDAM,

     Plaintiff,

v.

THE DISTRICT BOARD OF TRUSTEES
OF MIAMI-DADE COLLEGE, FLORIDA,

     Defendant.
_____/

## COMPLAINT

Plaintiff, SRILAKSHMI MEDAM ("Mrs. Medam"), by and through undersigned counsel,

sues Defendant, THE DISTRICT BOARD OF TRUSTEES OF MIAMI-DADE COLLEGE,

FLORIDA, and states as follows:

### NATURE OF ACTION

1.     This is an action for damages arising out of Defendant's failure to hire Mrs. Medam

based upon age and sex in violation of the Age Discrimination in Employment Act of 1967

("ADEA"), 29 U.S.C. § 623, Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §

2000e et seq, and the Florida Civil Rights Act of 1992 ("FCRA"), Fla. Stat. §§ 760.01-760.11.

### JURISDICTION AND VENUE

2.     This Court has original jurisdiction, pursuant to 28 U.S.C. § 1331, as this action

involves a federal question regarding the deprivation of Mrs. Medam's civil rights.

3.      This Court has supplemental jurisdiction, pursuant to 28 U.S.C. §1367(a), over

Mrs. Medam's state claims as those claims are so related to the federal claims that they form part

of the same case or controversy.

4.      Venue is proper in the Southern District of Florida, pursuant to 28 U.S.C. § 1391(b),

because the claims arose in this judicial district.

## **PARTIES**

5.      Mrs. Medam resides in Miami-Dade County, Florida.

6.      Defendant is a public, non-profit college and state educational institution located in

Miami-Dade County, Florida.

7.       Defendant is an employer within the meaning of the ADEA, Title VII, and the

FCRA.

## **ADMINISTRATIVE EXHAUSTION**

8.      On November 26, 2023, Mrs. Medam filed a Charge of Discrimination with the

Equal Employment Opportunity Commission ("EEOC"), which was dual filed with the Florida

Commission on Human Relations ("FCHR"), asserting that the Defendant discriminated against

her through its failure to hire her based upon age and sex in violation of ADEA, Title VII, and

FCRA.

9.      On February 2, 2025, the EEOC issued Mrs. Medam a notice advising a Right-to-

Sue letter would be issued to her by the U.S. Department of Justice.

10.     On May 28, 2025, the U.S. Department of Justice issued Mrs. Medam a Notice of

Right to Sue.

11.     Mrs. Medam brought this action within ninety (90) days of receipt of the Notice of

Right to Sue.

**STATEMENT OF FACTS**

I.        MRS. MEDAM'S PROFESSIONAL BACKGROUND

12.        Mrs. Medam (51 year-old female) is a highly skilled professional with over twenty-one (21) years of experience in higher education having served in various executive and highly technical managerial roles.

13.        Mrs. Medam holds a Master of Computer Science degree (2006), and Master of Business Administration degree (2012), from Florida International University ("FIU").

14.        Mrs. Medam is a proven leader with a successful track record in both systems deployment and building high performance teams.

15.        Mrs. Medam has experience managing technical Enterprise Resource Planning ("ERP") systems and business operations in compliance with federal regulations, state regulations, and institution policies.

16.        Mrs. Medam is an expert in identifying technological solutions to optimize operations, and in implementing processes and internal controls to maximize efficiency and minimize risk.

17.        In addition, during her career in higher education, Mrs. Medam, as an adjunct faculty member, has taught highly technical intensive courses to bachelors and masters level students.

a.    MRS. MEDAM'S EMPLOYMENT WITHIN HIGHER EDUCATION PRIOR TO DEFENDANT

18.        From 2004 to 2006, Mrs. Medam worked as a Statistician/PeopleSoft Data Manager for the  FIU College of Engineering Dean's Office.

19.     In her role as a Statistician/PeopleSoft Data Analyst, Mrs. Medam was responsible for, amongst other things, developing PeopleSoft queries, creating PowerPoint presentations for the dean and department chairpersons, managing classroom scheduling, and space management.

20.     From 2006 to January 2007, Mrs. Medam worked as a PeopleSoft Business Analyst for FIU.

21.     In her role as PeopleSoft Business Analyst, Mrs. Medam was responsible for, amongst other things, providing technical support to enrollment management teams, including the registrar's office, admission, and financial aid, working directly with functional leads and programmers on various system implementations and enhancements

22.     In January 2007, Mrs. Medam was promoted to Assistant Director, Database & Information Systems, for the FIU College of Engineering Dean's Office.

23.     In her role as Assistant Director, Mrs. Medam was responsible for, amongst other things, developing and maintaining the database system for Enrollment, degrees, and institutional research grants, and serving as a liaison between internal departments, and compiling statistical data required for Southern Association of Colleges and Schools ("SACS") accreditation, state reports, and national ranking surveys.

24.     From October 2008 to May 2009, Mrs. Medam worked as the University Assistant Registrar with FIU.

25.     In May 2009, Mrs. Medam was promoted to Associate University Registrar for FIU.

26.     In her roles as University Assistant Registrar and Associate University Registrar, Mrs. Medam was responsible for, amongst other things, leading the team on student records systems and daily operations, managing student records ERP systems, designing and

implementing Excess Credit Surcharge system in compliance with the legislature and supervising and training Student Records technical and functional teams.

27.     While in her registrar roles, Mrs. Medam played a key role in FIU's Student Records ERP upgrade from Peoplesoft 8.9 to 9.0.

28.     Mrs. Medam also led the implementation of various projects and enhancements, including the implementation of delivered PeopleSoft Final Exam functionality and the implementation of an online transcript ordering system, Parchment.

29.     After leading the implementation of Parchment, Mrs. Medam spearheaded its integration with PeopleSoft.

30.     In March 2014, after years of demonstrating her leadership abilities as Associate University Registrar, Mrs. Medam was promoted to University Assistant Controller.

31.     In her position as University Assistant Controller, Mrs. Medam was responsible for, amongst other things, leading and supervising the team on student financial systems, developing data tools to improve accuracy and efficiency, and managing ERP systems and business operations in compliance with federal, state and university regulations.

32.     After establishing an impressive foundation in higher education information technology ("IT") systems and large-scale institutional operations at FIU, Mrs. Medam made the strategic decision to pursue her dream job in IT with Defendant.

33.     Mrs. Medam's desire to work for Defendant derived, on a professional level, from her interest in the scale of Defendant's PeopleSoft and enterprise systems environment.

34.     On a personal level, Mrs. Medam viewed employment with Defendant as an opportunity to align more closely with an institution whose purported mission – to serve one of the most diverse student populations in the nation – deeply resonated with her own values.

b.   MRS. MEDAM'S EMPLOYMENT WITH DEFENDANT

35.      With that in mind, in March 2017, Mrs. Medam applied for, and commenced, her role with Defendant as Senior Enterprise Solutions Business Analyst.

36.      Mrs. Medam's new role as Defendant's Senior Enterprise Solutions Business Analyst allowed her to take on more responsibility, lead at a higher level, and drive innovation.

37.      In her role as Defendant's Senior Enterprise Solutions Business Analyst, Mrs. Medam was responsible for, amongst other things, supervising the student financials analyst team, developing and maintaining applications to meet customer needs, leading the implementation of the Application Fee delivered functionality, researching new PeopleSoft releases/updates to help plan for future business processes, performing fit/gap analysis and research of in-house, third-party or custom solutions to make objective recommendations for IT solutions based on industry best practices, developing functional specifications detailing the logic, configuration, and security requirements to workflows, identifying and implementing solutions to meet business objectives and support emerging priorities.

38.      By October 2018, the extensive skills, knowledge and leadership abilities Mrs. Medam consistently demonstrated while in her Senior Enterprise Solutions Business Analyst position earned an opportunity to take on a new leadership role as Director of Student Financial Services.

39.      In her role as Defendant's Director of Student Financial Services, Mrs. Medam was responsible for, amongst other things, managing a team of fourteen (14) employees, overseeing the student financials ERP system, developing and implementing the Credit and Collections module of the ERP system, and managing a 650-million-dollar portfolio of students to ensure compliance with Defendant's policies and procedures, as well as federal and state regulations.

II.     FAILURE TO HIRE

a.  DEFENDANT'S HIRING POLICY

40.     With regard to full-time vacancies, Defendant utilizes a recruitment, selection, and hiring policy titled "Recruitment, Internal/External Recruitment, Selection and Hiring Process" (hereinafter "Hiring Policy").

41.     Pursuant to the Hiring Policy, the screening for all full-time vacancies must be conducted by a duly constituted and trained screening committee.

42.     The screening committee is composed of individuals who report to, or interact with, the Director of PSA position.

43.     The screening committee members are responsible for reviewing applicant pools and interviewing candidates.

44.     The screening committee chair is responsible for entering interview times, evaluations, recommendations into the Applicant Tracking System for each candidate.

45.     Pursuant to the Hiring Policy, after interviewing candidates, the screening committee recommends three (3) to five (5) candidates to the hiring manager, who in their judgment are qualified for the position.

46.     The hiring manager then interviews the recommended candidates from the applicant pool referred by the screening committee, recommending one candidate for the appointment.

47.     The hiring manager's responsibilities, when evaluating candidates for final recommendation, include selecting qualified candidates for interviews from the list provided by the screening committee, informing the screening committee members of the outcome of the

recruitment process, and personally contacting all internal candidates interviewed and not selected to the position.

        b.   DIRECTOR OF PSA

48.     In January 2023, the Defendant posted an employment opening for the position of Director of People Soft Applications ( "Director of PSA").

49.     The Job Summary section of the posting stated that the "position draws on experience and/or expert resources with in-depth knowledge of the business to provide college-wide solutions, by managing complex multi-faceted ERP software applications including the integrations to other custom and/or COTS systems."

50.     The minimum requirements for the Director of PSA position included, amongst other things, nine (9) years of progressive experience in managing PeopleSoft ERP or other ERP systems and four (4) years of supervisory responsibility in managing to midsize to large IT teams.

51.     Additionally, minimally qualified candidates were expected to have knowledge and understanding of College organization, knowledge of national and industry offerings and trends pertaining to design, development and support of enterprise applications, possess effective problem-solving, negotiation, and decision-making skills to influence management as well as internal and external partners, and possess excellent project management skills with a proven track record.

52.     In February 2023, Mrs. Medam applied for the Director of PSA position as an internal candidate and was selected by the screening committee for an interview, which was scheduled for March 28, 2023.

53.     The screening committee members consisted of Jorge Arenas, Senior Director of ERP & Database Operations; Helen Munis Bermudez, Associate Dean of Academic and Faculty Affairs; and Adeeb Iqbal, Senior Director of PeopleSoft Applications.

54.     On March 28, 2023, the screening committee interviewed Mrs. Medam.

55.     Mr. Medam's interview with the screening committee members was successful and they recommended Mrs. Medam, by unanimous decision, to the hiring manager.

56.     The hiring manager was Jennifer Camprubi, AVP of Business Enterprise Solutions ("CAMPRUBI").

57.     On May 2, 2023, Mrs. Medam was interviewed by CAMPRUBI.

58.     Unlike the interview with the screening committee members, CAMPRUBI conducted the interview with Mrs. Medam in a less structured fashion and failed to present any substantive questions that were designed to elicit information about Mrs. Medam's qualifications, including experience and expertise, for the Director of PSA role.

59.     Following the interview, between May 2023 and August 2023, Mrs. Medam did not hear anything from CAMPRUBI regarding final selection of a candidate for appointment to the Director of PSA.

60.     However, on September 20, 2023, Defendant's HR representative, Nubia Gil, sent Mrs. Medam an email advising that she was not selected for the Director of PSA.

61.     Mrs. Medam was confused by Ms. Gil's email because it was contradictory to Defendant's Hiring Policy, which required the hiring manager, CAMPRUBI, to contact Mrs. Medam personally as an internal candidate who was not selected.

62.     CAMPRUBI hired another candidate, Bhupendra Thakkar (38 year-old male), for the Director of PSA.

63.      Mr. Thakkar was not the most qualified individual for the Director of PSA position

nor was he better qualified for the Director of PSA than Mrs. Medam.

64.      CAMPRUBI hired Mr. Thakkar because he was a younger man and not because he

was qualified for the position.

65.      No reasonable person, in their exercise of impartial judgment, could have chosen

Mr. Thakkar over Mrs. Medam.

c.   <u>SELECTED CANDIDATE NOT QUALIFIED FOR THE DIRECTOR OF PSA POSITION</u>

66.      Candidates applying for the Senior Director position were required to have, at the

minimum, nine (9) years of progressive experience in managing PeopleSoft ERP or other ERP

systems and four (4) years of supervisory responsibility in managing midsize to large IT teams.

67.      Mrs. Medam served in various executive and managerial roles throughout her

twenty one (21) year career between her time with Florida International University ("FIU") and

Defendant.

68.      She carried out those executive and managerial roles in University departments

including Academic (Dean's Office), Enrollment Management, Office of the Registrar, IT, and

Student Financials/Controllers Office.

69.      Mrs. Medam had fifteen (15) years of in-depth knowledge of United States ("U.S.")

higher education regulations, compliance structure, and guidelines for institutional compliance.

70.      In contrast, Mr. Thakkar was hired by the Defendant in 2020, under an H-1B visa,

as a Senior Systems Analyst.

71.      With that in mind, Mr. Thakkar had, at best, three (3) years of experience in a non-

managerial technical analysis and/or programming role

72.     Moreover, the U.S. Citizenship and Immigration Services' ("USCIS") approval of the H-1B visa requires that the work authorization under the visa to match the requirements and qualifications of the Director of PSA.

73.     Mr. Thakkar was approved by USCIS for a non-managerial technical analysis and/or programming role, i.e., Senior Systems Analyst.

74.     Defendant's sponsorship of Mr. Thakkar's H-1B is for a lesser role, i.e., Senior System Analyst.

75.     Mr. Thakkar's role, as a Senior Systems Analyst, did not give him the requisite "knowledge and experience" to be most the most qualified applicant for the Director of PSA Position.

76.     As a Senior Systems Analyst, Mr. Thakkar did not have the necessary work authorization to engage in director, or executive, level functions and responsibilities in the department.

77.     As a result, Mr. Thakkar's H-1B visa was not compliant with federal law at that he was hired for the Director of PSA position.

78.     In addition, H-1B employers, like Defendant, are required to prioritize qualified US Citizens, like Mrs. Medam, for positions they seek to fill with H-1B workers.

79.     CAMPRUBI did not prioritize the hiring of a qualified older woman who was a U.S Citizen – Mrs. Medam - because CAMPRUB intended on hiring a younger man despite his lack of qualifications, or proper work authorization, for the Director of PSA position.

    d.  FAILURE TO FOLLOW HIRING POLICY

80.     Foremost, the Hiring Policy requires that the screening committee to recommend three (3) to five (5) candidates to the hiring manager who in their judgment are qualified for the position.

81.     Although Mr. Thakkar was interviewed by screening committee, the screening committee did not recommend Mr. Thakkar  to be interviewed by CAMPRUBI for the Senior Director position because the committee did not find him to be qualified for the Director of PSA.

82.     CAMPRUBI circumvented the requirements of the Hiring Policy and interviewed Mr. Thakkar even though he was not recommended by the screening committee.

83.     CAMPRUBI hired Mr. Thakkar because he was a younger man and not because he was qualified for the position.

84.     In addition, the Hiring Policy required that the hiring manager – CAMPRUBI – inform the screening committee members regarding the outcome of the recruitment process, and personally contact all internal candidates interviewed but not selected for the position.

85.     CAMPRUBI did not inform screening committee members regarding the outcome of the recruitment process following her selection of Mr. Thakkar.

86.     In addition, CAMPRUBI did not personally contact Mrs. Medam to inform her of the non-selection.

87.     CAMPRUBI failed to adhere to, and circumvented, the Hiring Policy because CAMPRUBI intended on hiring a younger man despite his lack of qualifications, or proper work authorization, for the Director of PSA position.

88.     As result of CAMPRUBI's  discriminatory hiring process, Mrs. Medam suffered, and continues, to suffer damages.

## COUNT I – FAILURE TO HIRE BASED UPON AGE IN VIOLATION OF ADEA

89.    Mrs. Medam realleges paragraphs 1 through 88 as if fully stated herein.

90.    As alleged in paragraphs 6 to 7, DEFENDANT is an employer.

91.    As alleged in paragraph 12, Mrs. Medam was over 40 years of age at the time CAMPRUBI, as Defendant's agent, failed to hire Mrs. Medam for the Director of PSA role.

92.    As alleged in paragraphs 40 to 88, Mrs. Medam suffered an adverse employment action when CAMPRUBI, as Defendant's agent, failed to hire Mrs. Medam f for the Director of PSA role.

93.    As alleged in paragraphs 40 to 88, CAMPRUBI, as Defendant's agent, failed to hire Mrs. Medam for the Director of PSA role because of her age.

94.    As alleged in paragraphs 12 to 39, Mrs. Medam was qualified for the Director of PSA role.

95.    As alleged in paragraphs 40 to 88, Mrs. Medam lost the position to Mr. Thakkar who was a younger and unqualified for the Director of PSA role.

96.    As a direct and proximate result of DEFENDANT's failure to hire, Mrs. Medam suffered lost wages and benefits.

97.    As a direct and proximate result of DEFENDANT's failure to hire, Mrs. Medam suffered, and continues to suffer, emotional pain, inconvenience, loss of dignity, and mental anguish.

**WHEREFORE**, Mrs. Medam demands compensation for lost wages, benefits, pecuniary damages, liquidated damages for DEFENDANT's willful conduct, compensatory damages, including, but not limited to emotional pain, inconvenience, loss dignity and mental anguish, attorney's fees and costs, and such other relief this Court deems just and proper including, but not

limited to, emotional pain, inconvenience, loss dignity and mental anguish, attorney's fees and costs, and such other relief this Court deems just and proper

## COUNT II– FAILURE TO HIRE BASED UPON SEX IN VIOLATION OF TITLE VII

98.     Mrs. Medam realleges paragraphs 1 through 88 as if fully stated herein.

99.     As alleged in paragraph 12,  Mrs. Medam belongs to a protected group.

100.     As alleged in paragraphs 40 through 88, Mrs. Medam suffered an adverse employment action when CAMPRUBI, as Defendant's agent, failed to hire Mrs. Medam Director of PSA role.

101.     As alleged in paragraphs 12 through 39, Mrs. Medam was qualified Director of PSA role.

102.     As alleged in paragraphs 40  through 88, Mrs. Medam's sex was a motivating factor in CAMPRUBI's decision not to hire Mrs. Medam for the Director of PSA since CAMPRUBI chose a man who was not qualified, nor selected by the screening committee, for the Director of PSA position.

103.     As alleged in paragraph 40 through 88, CAMPRUBI, as Defendant's agent, treated similarly situated employees outside Mrs. Medam's class – Mr. Thakkar – more favorably when Mr. Thakkar was not qualified nor selected by the screening committee for the Director of PSA position.

104.     As a direct and proximate result of DEFENDANT's failure to hire, Mrs. Medam suffered lost wages and benefits.

105.     As a direct and proximate result of DEFENDANT's failure to hire, Mrs. Medam suffered, and continues to suffer, emotional pain, inconvenience, loss of dignity, and mental anguish.

**WHEREFORE**, Mrs. Medam demands compensation for lost wages, benefits, compensatory damages, including, but not limited to emotional pain, inconvenience, loss dignity and mental anguish, attorney's fees and costs, and such other relief this Court deems just and proper.

### COUNT III– FAILURE TO HIRE BASED UPON AGE IN VIOLATION OF FCRA

106.    Mrs. Medam realleges paragraphs 1 through 88 as if fully stated herein.

107.    As alleged in paragraphs 6 to 7, DEFENDANT is an employer.

108.    As alleged in paragraph 12, Mrs. Medam was over 40 years of age at the time CAMPRUBI, as Defendant's agent, failed to hire Mrs. Medam for the Director of PSA role.

109.    As alleged in paragraphs 40 to 88, Mrs. Medam suffered an adverse employment action when CAMPRUBI, as Defendant's agent, failed to hire Mrs. Medam for the Director of PSA role.

110.    As alleged in paragraphs 40 to 88, CAMPRUBI, as Defendant's agent, failed to hire Mrs. Medam for the Director of PSA role because of her age.

111.    As alleged in paragraphs 12 to 39, Mrs. Medam was qualified the Director of PSA role.

112.    As alleged in paragraphs 40 to 88, Mrs. Medam lost the position to Mr. Thakkar who was a younger and unqualified for the Director of PSA role.

113.    As a direct and proximate result of DEFENDANT's failure to hire, Mrs. Medam suffered lost wages and benefits.

114.    As a direct and proximate result of DEFENDANT's failure to hire, Mrs. Medam suffered, and continues to suffer, emotional pain, inconvenience, loss of dignity, and mental anguish.

**WHEREFORE**, Mrs. Medam demands compensation for lost wages, benefits, punitive damages for Defendant's willful conduct, compensatory damages, including, but not limited to emotional pain, inconvenience, loss dignity and mental anguish, attorney's fees and costs, and such other relief this Court deems just and proper.

### COUNT IV– FAILURE TO HIRE BASED UPON SEX IN VIOLATION OF FCRA

115.    Mrs. Medam realleges paragraphs 1 through 88 as if fully stated herein.

116.    As alleged in paragraph 12,  Mrs. Medam belongs to a protected group.

117.    As alleged in paragraphs 40 through 88, Mrs. Medam suffered an adverse employment action when CAMPRUBI, as Defendant's agent, failed to hire Mrs. Medam for the Director of PSA role.

118.    As alleged in paragraphs 12 through 39, Mrs. Medam was qualified for the Director of PSA role.

119.    As alleged in paragraphs 40  through 88, Mrs. Medam's sex was a motivating factor in CAMPRUBI's decision not to hire Mrs. Medam for the Director of PSA since CAMPRUBI chose a man who was not qualified, nor selected by the screening committee, for the Director of PSA position.

120.    As alleged in paragraph 40 through 88, CAMPRUBI, as Defendant's agent, treated similarly situated employees outside Mrs. Medam's class – Mr. Thakkar – more favorably because Mr. Thakkar was not qualified nor selected by the screening committee for the Director of PSA position.

121.    As a direct and proximate result of DEFENDANT's failure to hire, Mrs. Medam suffered lost wages and benefits.

122.    As a direct and proximate result of DEFENDANT's failure to hire, Mrs. Medam suffered, and continues to suffer, emotional pain, inconvenience, loss of dignity, and mental anguish.

**WHEREFORE**, Mrs. Medam demands compensation for lost wages, benefits, punitive damages for Defendant's willful conduct, compensatory damages, including, but not limited to emotional pain, inconvenience, loss dignity and mental anguish, attorney's fees and costs, and such other relief this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Mrs. Medam demands a trial by jury on all issues so triable.

Dated this 26th day of  August 2025.

Respectfully submitted,

BY: _/s/ Ely Gonzalez_
    ELY GONZALEZ, ESQ.
    Fla. Bar No.:  0055879
    **LAW OFFICE OF ELY GONZALEZ, P.A.**
    2125 Biscayne Blvd, Suite 346
    Miami, Florida 33137
    Telephone: (305) 645-8971
    Primary email: elygonzalez@eglawpa.com
    Secondary email: info@eglawpa.com